# Bovaird & Seyfang Manufacturing Company *v.* Ferguson, Appellant.

*Practice, C. P.—Summons—Alias summons—Pluries summons—Statute of limitations.*

Where a summons in assumpsit on promissory notes is issued within six years from the maturity of the note, and returned non est inventus, and an alias summons is issued within six years from the return of the original summons, and is also returned non est inventus, and a pluries summons is issued and returned served after the expiration of six years from the return day of the original process, but within six years from the return of the alias the action is not barred by the statute of limitations.

In such a case when the alias summons was returned unserved, the original process was continued, but not for a longer period from the return of the alias than the cause of action would have continued if the original summons had not been issued. Neither the issue of the alias summons nor the pluries summons constituted a new suit.

A creditor is not bound to resort to any particular jurisdiction to sue his debtor. While he must bring his suit within the statutory period, he can sue wherever he pleases, taking, of course, the chance of finding the debtor and having him served with the process.

Where a suit is brought in the domicile of a creditor, and is kept alive by the issue of alias and pluries summonses properly returned, the debtor cannot complain that for ten years prior to the issue of the pluries summons, the creditor knew that he had lived in another county.

*Affidavit of defense—Promissory notes—Practice—Payment.*

In an action upon promissory notes an affidavit of defense is sufficient which avers that the defendant was employed by another person to drill oil and gas wells; that in the prosecution of this work defendant needed certain materials and supplies; that the plaintiff refused to sell the defendant such supplies, but did sell them on the faith and credit of his employer, who was to pay for them deducting them from defendant's compensation; that the notes were accepted by the plaintiff with full knowledge of this arrangement, and that defendant believed and understood they had been subsequently paid in accordance with the agreement.

Argued Oct. 31, 1905. Appeal, No. 170, Oct. T., 1905, by defendant, from order of C. P. No. 3, Allegheny Co., May T., 1898, No. 215, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Bovaird & Seyfang Manufacturing Company v. J. D. Ferguson. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

236 BOVAIRD & SEYFANG CO. *v.* FERGUSON, Appellant.

Assumpsit on a promissory note.

Rule for judgment for want of a sufficient affidavit of defense.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*T. S. Brown*, of *Brown & Stewart*, and *D. B. Taylor*, of *Jack & Taylor*, for appellant.—The affidavit of defense shows a course of conduct by the plaintiff in the treatment of its claim against the defendant which should, in justice and equity, bar it, the plaintiff, from any further assistance of any court in the enforcement of this claim against the defendant : Cope v. Humphreys, 14 S. & R. 15 ; Summerville v. Holliday, 1 Watts, 507–515 ; Gregory v. Commonwealth, 121 Pa. 611 ; Reed v. Reed, 46 Pa. 239 ; Foulk v. Brown, 2 Watts, 209 ; 1 Wood on Limitations, 50 ; Suter v. Sheeler, 22 Pa. 308.

In equity jurisprudence it has always been a recognized principle that the welfare of society requires the discouragement of stale claims, and that a suitor who sleeps on his rights shall not have the aid of that court : Smith v. Clay, Ambler, 645 ; Waring v. Penna. R. R. Co., 176 Pa. 172 ; Neel v. McElhenny, 189 Pa. 489 ; Biddle v. Girard Nat. Bank, 109 Pa. 349 ; VanLoon v. Smith, 103 Pa. 238 ; Hemphill v. McClimans, 24 Pa. 367 ; Grier v. Northern Assurance Co., 183 Pa. 334 ; Erie City Iron Works v. Barber, 102 Pa. 156 ; Wright v. Hart, 44 Pa. 454 ; Johnston v. Standard Mining Co., 148 U. S. 360 (13 Sup. Ct. Repr. 585) ; Willard v. Wood, 164 U. S. 502 (17 Sup. Ct. Repr. 176) ; Moore v. Blake, 1 Ball & Beatty, 62.

*Walter P. Rainbow*, with him *John B. Chapman*, for appellee.—The statute of limitations is tolled immediately upon the return, by the sheriff, of the original writ, whether it be returned served or non est inventus or nihil habet, and any further delay by plaintiff in the prosecution of his claim is not affected by the statute of limitations, but is a presumption of abandonment of the suit : Biddle v. Girard Nat. Bank, 109 Pa. 349 ; Hemphill v. McClimans, 24 Pa. 367 ; Bell's Appeal,

115 Pa. 88 ; Waring v. Penna. R. R. Co., 176 Pa. 172 ; Hillside Coal & Iron Co. v. Heermans, 191 Pa. 116.

OPINION BY MR. JUSTICE BROWN, May 14, 1906 :

The notes upon which this suit was brought matured in December, 1893, and January, 1894. The summons was issued March 14, 1898, and was returned n. e. i. On March 4, 1904, an alias summons was issued, to which there was the same return. On March 27, 1905, a pluries summons was issued, which was returned served. One of the contentions of the appellant is that, as this last summons was not issued and served within six years from the return day of the original process, the action is barred by the statute of limitations.

When the original summons was issued the statute had not run against the plaintiff's claim. The institution of the suit tolled it, and the continuance of the suit continued the tolling. If the suit had been abandoned at any time after the expiration of six years from the time the cause of action arose, the statute would have become a bar. The institution of an independent second suit would have been an abandonment of this one, and if such suit had been instituted after six years had expired from the maturity of the notes, the statute would have barred a recovery in it; but no new suit was instituted and the present one was never abandoned. It was continued in the only way it could have been continued to keep on tolling the statute after the sheriff had failed to find the defendant, and that was by issuing an alias summons. This alias was not the inception of a new suit, but a continuance of the original process, tolling the statute. " Instead of being the inception of a fresh suit an alias or pluries is, at the common law, but a continuance of the process ; and there is no reason why it should not be so here where the capias or summons is the originating writ. It was held to be strictly so in Schlosser v. Lesher, 1 Dall. 411, where to a plea of the statute of limitations, the plaintiff successfully replied an original summons on a particular day within the six years ; which he could not have done, had not the action been commenced by such original, and continued by the further process without break or interval : " Lynn v. McMillen, 3 P. & W. 170. " The action begins, not with the date of the præcipe, but with the issue of the summons

or capias. Its commencement is not postponed to the time when service of the writ is effected. Nor is it necessary that the writ whose issuance is the beginning of the action should be served at all. But it must be returned non est inventus or nihil habet, or otherwise; if not so returned it will be considered abandoned. When returned nihil habet or non est inventus, the action may be continued by the issue of an alias, or, after an alias, by a pluries writ. But the alias writ must issue within six years of the issue of the original writ, else it will be considered, so far as the statute of limitations is concerned, as the commencement of the action: " Trickett's Penna. Law of Limitations, 227. " The institution of the alias summons lifted away or tolled the bar of the statute of limitations. The alias suit was instituted within six years of the first, that is to say, about five years after the first summons. The first summons was not served, the second was. The second suit was for the same cause, was entitled an alias, and so marked on the record; and this, as it has been held, is so connected and linked with the first as to be a continuation or reiteration of the original, and so indissolubly connected as to be one; and that, so far as the statute is concerned, it stops running from the institution of the first process. We will not say that the demand might not be barred, if the plaintiff delayed six years before issuing his alias. That will be a question not presented here: " McClurg v. Fryer & Anderson, 15 Pa. 293.

When the alias summons was returned unserved, the original process was continued, but not for a longer period from the return of the alias than the cause of action would have continued if the original summons had not been issued. Before such a period had expired the plaintiff, on March 27, 1905—a little more than a year from the date of the return to the alias—procured the pluries summons to be issued. This was but an alias writ and is called pluries simply to distinguish it from the first alias. Each was but a continuance of the original summons, which had preserved the life of plaintiff's claim from March 14, 1898. At the expiration of six years from that date the claim would have expired, if what had continued its life had not also been continued. Before the claim did so expire it was prolonged by the continued process of the law, and when it was in existence on March 27, 1905, it was still further continued

by the pluries writ. That this was the effect of that writ has never before been questioned. In Hudson v. Carey, 11 S. & R. 10, Hudson, the defendant in the court below, when asked to pay his promissory note, which had matured in June, 1812, replied to the plaintiff that he owed him nothing, as he had been discharged as an insolvent under the state's insolvent act, which this court, in 1817, in Farmers' & Mechanics' Bank v. Smith, 3 S. & R. 63, had declared to be constitutional and valid. In 1821, this was reversed by the supreme court of the United States : Farmers' & Mechanics' Bank v. Smith, 19 U. S. 131. Carey, the plaintiff, thereupon brought suit on the note held by him and insisted that his cause of action, which had arisen in June, 1812, was not barred, because the supreme court of the United States had not decided until 1821 that Hudson's discharge was invalid. In answer to this TILGHMAN, C. J., said: "The courts were never shut one moment against the plaintiff ; it was known that the judgment of this court, in the case of the Farmers' & Mechanics' Bank v. Smith, was carried to the supreme court of the United States, by writ of error, so that the constitutionality of the insolvent act was not finally decided ; the plaintiff might have pursued the same course, if judgment had been given against him; or, in order to avoid that expense, he might have issued a writ against the defendant, without having it served, and continued the process in that way, from time to time, until the supreme court of the United States had decided." If process can be continued from time to time by deliberately not having an alias or pluries writ served, a fortiori it ought to be continued when a plaintiff tries to have it served, but cannot because defendant is not to be found.

A creditor is not bound to resort to any particular jurisdiction to sue his debtor. While he must bring his suit within the statutory period, he can sue wherever he pleases, taking, of course, the chance of finding the debtor and having him served with the process. In the present case the appellant complains that, though the plaintiff knew he had lived in Indiana county since 1895, he knew nothing of this suit until he was served with the pluries summons in Allegheny county ; but the plaintiff was not required to go to Indiana county to sue for its money. It brought its suit presumably at its own residence, at any rate,

where it was its right to sue, and if the defendant was caught by the process, issued within the statutory period and kept alive, he is as much bound by the same as if he had been sued in his own domicile within six years from the maturity of his notes. If he really owes them, it was rather for him to look up his creditor, and he cannot complain that it remained at home and brought its suit there, keeping it alive until he was found by the process server.

But for an utter misapprehension of what was decided in Curcier's Estate, 28 Pa. 261, due, no doubt, to what appears in the syllabus of that case, which is repeated in Troubat & Haley's Practice, sec. 1630, the position assumed by the appellant would hardly have been taken. All that was decided in that case was that an alias writ issued in 1851 was too late to keep alive a suit brought in 1836—fifteen years before—in which the summons had not been served. The language of BLACK, C. J., is: "The question is not whether a summons returned non est inventus is to be regarded as the commencement of the action when it is followed in a short time afterwards with an alias which is actually served; but whether the statute is tolled by a writ not executed though there be an interval of fifteen years between it and the alias. If a party can lie by in such a case for fifteen years, he may do so for an indefinite time." The misunderstanding by the reporter of what the case decides is equaled only by what appears in Troubat & Haley's Practice, supra, and it is well that now, after fifty years, an opportunity has been given to correct an impression that the syllabus of the case seems to have made.

The question of the appellee's laches in prosecuting its suit is not in the case. It brought the suit within time, and on March 29, 1905, within two days from the time the pluries summons was served, the defendant was notified that the plaintiff's statement had been filed. An affidavit of defense was filed on April 11, 1905. On the 20th of that month a rule was taken for judgment, and on July 28, following, it was entered for the insufficiency of the affidavit of defense. The case is one of more than usual expedition by the plaintiff after it succeeded in getting the defendant into court.

The affidavit of defense avers that at the time the indebtedness was contracted for which the notes in suit were given, the

defendant was engaged in the business of an oil well driller, and was employed in that capacity by P. E. Calhoun, the payee in the notes, to drill oil and gas wells for him; that to enable defendant to prosecute the work it was necessary to purchase certain materials and supplies, which he did, from the plaintiff, then, as now, a dealer in them; that the defendant being without property or credit, the plaintiff refused to sell the goods to him, but agreed to and did sell them upon the faith and credit of said Calhoun, under an agreement that he, the said Calhoun, should pay for the materials and supplies and deduct the amount due for them from the compensation to be paid by him to defendant in the course of his said employment, all of which was known, understood and agreed to by the then general manager of the plaintiff; that the notes in suit were given in pursuance of such arrangement; that the said Calhoun did, from time to time, deduct from the compensation due defendant, the full amount of the said obligations, and defendant believes and understands that Calhoun has settled his indebtedness with the plaintiff. This affidavit was sufficient to prevent judgment. In view of its allegations, which it must be assumed will be supported by proofs, the burden will be upon the plaintiff to show not only that the notes have not been paid, but why they were not paid to it by Calhoun in pursuance of the agreement set forth in the affidavit of defense.

Judgment reversed and procedendo awarded.